UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE BRUNK,

       Plaintiff,

v.                                                CIVIL NO. 06-15160
                                                   HON. LAWRENCE P. ZATKOFF

AMICA MUTUAL INSURANCE COMPANY,

       Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 2, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on cross motions for summary judgment (dkt 9, 17). The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.

**II. BACKGROUND**

Plaintiff and her now deceased husband, Michael Brunk, owned a home together as tenants

by the entirety in Ortonville, Michigan. On the evening of December 25, 2005, Michael Brunk committed suicide in the Brunk home by covering himself in gasoline and lighting himself on fire with a candle. He died shortly thereafter from soot and smoke inhalation. The fire spread throughout the house, causing damage to the home and personal effects contained therein. Plaintiff sought recovery from Defendant, who insured the house at that time, for the full amount of the losses incurred.

Defendant employed the firm of Strongrich Reschly, Inc., to evaluate all relevant replacement and actual cost values. After an investigation and report by the assigned adjuster, William Laslavich, Defendant compensated Plaintiff for the building loss in the amount of $43,988.36, which represented the payoff on Plaintiff's GMAC mortgage. Defendant paid Plaintiff an additional $39,048.41 for loss to personal property. Neither of these figures, however, constituted the full amount of value lost. Laslavich had estimated that the actual cash value after depreciation for the building loss and personal property loss amounted to $78,773.72 and $74,347.50, respectively. Plaintiff maintains that she is entitled to full recovery; Defendant contends that full compensation is inappropriate because Michael Brunk, a coinsured under the policy, intentionally started the fire, thereby forfeiting his interest in the property.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should

be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, both parties move for summary judgment, the court examines each motion individually under these same principles. *Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 457 (6th Cir. 2004).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When interpreting insurance policies, the court first reviews the language to discern the intent of the parties. *Gencorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). Terms that are clear and unambiguous will be applied as written. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992). Ambiguities are resolved in favor of the insured. *Group Ins. Co. v. Czopek*, 489 N.W.2d 444, 446 (Mich. 1992). Similarly, policy exclusions that are not clear and unambiguous will be construed in favor of the insured. *Id.* at 447. Insurance policy clauses are deemed valid so long as they are not against public policy. *Fresard v. Mich. Millers Mutual Ins. Co.*, 327 N.W.2d 286, 288 (Mich. 1982).

## IV. ANALYSIS

### A. Innocent Coinsured Doctrine

The Michigan Court of Appeals explains that the innocent coinsured doctrine "applies in cases where an innocent spouse or coinsured makes a claim for insurance proceeds for a loss of property that was jointly owned with the insured responsible for the loss." *Mich. Basic Prop. Ins. Ass'n v. Wasarovich*, 542 N.W.2d 367, 369 (Mich. Ct. App. 1995). The doctrine limits a policy's exclusion "to the insured who committed the fraud and makes the claim under the policy." *Morgan v. Cincinnati Ins. Co.*, 307 N.W.2d 53, 54 (Mich. 1981). In its seminal case addressing the issue, the Michigan Supreme Court deemed recovery appropriate in part because "one spouse may not be held responsible for the crime of the other."[1] *Id.* at 60 (Fitzgerald, J.). Rooted in these considerations, the doctrine protects innocent insured parties from being penalized for the acts of their coinsureds. *Wasarovich*, 542 N.W.2d at 370.

Michigan has followed the majority of jurisdictions in limiting an innocent coinsured's recovery to one-half in most circumstances. *Morgan*, 307 N.W.2d 53; *Ramon v. Farm Bureau Ins. Co.*, 457 N.W.2d 90, 94 (Mich. Ct. App. 1990). Despite Michigan's acknowledgment of a general rule limiting recovery to one-half of the insurance proceeds in cases involving culpable spouses, the state has declined a "hard and fast rule that an innocent insured spouse may never collect more than one-half of the insurance proceeds when the damaged property is held by the entireties." *Ramon*, 457 N.W.2d at 94. Nevertheless, the Michigan Appellate Court concedes that "under most circumstances, [one-half recovery] is the correct and equitable result." *Id.* The Michigan courts have been reluctant to award more than one-half recovery in cases that involve some wrongdoing. *Lewis v. Homeowners Ins. Co.*, 432 N.W.2d 334, 337 (Mich. Ct. App. 1988) ("Here, the trial judge

---

[1] Innocent individuals are not always immune under Michigan law from the unlawful behavior of their spouses. For example, one Michigan statute permits the seizure of any vehicle in which "lewdness, assignation or prostitution or gambling" occurs, even if the vehicle is owned jointly, and one of the owners is innocent of any wrongdoing. MICH. COMP. LAWS § 600.3801; *see also Bennis v. Michigan*, 516 U.S. 442 (1996).

erred in permitting plaintiff to recover the whole value of the property damage. Her recovery should have been limited to one-half the insurance proceeds.").

At first glance, the insurance policy at issue in this case contains exclusions, which bar recovery by any insured when any other insured acts intending to cause a loss, that seem to trigger the innocent coinsured doctrine:

> A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . .
>
> 8. **Intentional Loss.**
>
> Intentional loss means any loss arising out of any act an insured commits or conspires to commit with the intent to cause a loss.
>
> In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

These exclusionary provisions, however, do not stand alone; the insurance policy also includes a section detailing "special provisions – Michigan." These additional provisions amend the foregoing provision regarding intentional loss by acknowledging recovery for innocent coinsureds:

> This exclusion does not apply, with respect to loss to covered property caused by fire, to an insured who does not commit or conspire to commit, any act that results in loss by fire. We cover such insured only to the extent of that insured's legal interest, but not exceeding the applicable limit of liability.
>
> We may apply reasonable standards of proof to claims for such loss.

The policy notes that the insurer "will not be liable in any one loss . . . [t]o an insured for more than

5

the amount of such insured's interest at the time of loss; or . . . [f]or more than the applicable limit of liability." These provisions effectively write the innocent coinsured doctrine into the insurance policy and thus safeguard against the need for the doctrine by permitting recovery for innocent insured parties. Based on these provisions, there is no danger that Michael Brunk's actions will be imputed to Plaintiff, and the policy provides for Plaintiff's relief up to her "legal interest." When the terms of an insurance policy provide for the innocent spouse, as they do here, the innocent coinsured doctrine does not need to be invoked.

Nonetheless, Plaintiff observes that the *Ramon* decision, in refusing to adopt a blanket rule, points by way of counter-example to an Indiana case in which "equity would demand that the innocent insured spouse be allowed to collect one hundred percent of the proceeds." *Ramon*, 457 N.W.2d at 94 (citing *Liggett*, 426 N.E.2d 136). Two years earlier, the Michigan Court of Appeals referenced the same *Liggett* decision but declined to follow it because the fact patterns of the two cases were too divergent. *Lewis*, 432 N.W.2d at 337. Taken together, it has been argued that "the logic of *Ramon* and *Lewis* suggests that, when no implicated insured is involved, the full contractual payment should be made." *Winterbottom v. Transamerica Ins. Co.*, No. 183566, 1997 Mich. App. LEXIS 2097, at *11 (Mich. Ct. App. Nov. 4, 1997).

Reading *Ramon* and *Lewis* in such a manner oversimplifies the situation by seemingly ignoring the terms of an insurance policy in favor of equity and public policy-based considerations. The *Liggett* case involved a different fact pattern: the culpability of the alleged wrongdoing spouse was in doubt, and the insurance policy differed significantly. Although that court maintained that its decision would have been unchanged by a finding that the decedent had intentionally started the fire, the fact remains that the terms of the *Liggett* policy did not exclude intentional losses. *See*

6

*Liggett*, 426 N.E.2d at 140–41 ("The insurance policy involved in this case contains no language excluding from coverage damage caused by fires . . . which are caused intentionally by the insured."). *Liggett* could have conceivably justified full recovery for the innocent spouse on this omission alone. Although the Michigan Court of Appeals cites *Liggett* as a model example for full recovery, *Liggett* provides no precedential value, and the fact pattern of this case does not justify full recovery. Further, the Michigan Supreme Court has not spoken to the matter of full recovery.

The innocent coinsured doctrine does not apply to the present case. More precisely, the core concept of the doctrine is retained in the insurance policy's provisions. Thus, relief for Plaintiff need not be sought beyond the very terms of the policy. And, despite the facial similarities between the present case and *Liggett*, the latter offers no guidance or precedential value.

## B. Plaintiff's Interest

Defendant argues that the interests that Plaintiff and her deceased husband had in the insurance policy were separate and distinct at the time of loss. Plaintiff contends that she became the sole owner of the house at the moment of her husband's death and is thereby entitled to full compensation. Determining Plaintiff's interest at the time of loss involves an examination not of her interest in the property but rather her interest in the insurance policy. *Morgan*, 307 N.W.2d at 53 ("Claimant's right in this matter is determined not by interest in the insured property but by the rights under the contract of insurance."); *see also Monaghan v. Agricultural Fire Ins. Co.*, 18 N.W. 797, 803 (Mich. 1884); POWELL ON REAL PROPERTY § 52.05.

In *Howell v. Ohio Casualty Insurance Co.*, a wrongdoing spouse died in the inferno that he started, and the court there framed the issue as "whether the intentional burning by one spouse of a homestead, held in tenancy by the entirety, will bar the recovery by the innocent spouse under a

7

fire insurance policy." 307 A.2d 142, 142 (N.J. Super. Ct. App. Div. 1974). In construing the innocent spouse's interest, the *Howell* court noted that viewing husband and wife as one insured unit contravenes the nature of the estate in that it

> goes against both the policy of recent cases and the facts herein. Even if it could be said that the realty was owned jointly, *certainly the contract rights under the fire policy could not be said to be in the same category.* This court views those rights as personal property able to be possessed separately and individually by both spouses.

*Id.* at 145 (emphasis supplied). The *Howell* court thus found the rights and interests of Plaintiff and the deceased under their insurance policy as several rather than joint. This Court finds *Howell's* interpretation persuasive.

Here, like *Howell*, it is evident that Plaintiff's interest under the policy was severable from Michael Brunk's interest because the policy language explicitly exempts "an insured who does not commit or conspire to commit, any act that results in loss by fire." Plaintiff and her husband thus held the contract rights under the policy "as personal property able to be possessed separately and individually by both spouses." *Id.* Determining the extent of Plaintiff's interest, then, involves construction of the policy terms. *Morgan*, 307 N.W.2d at 53. Unquestionably, Michael Brunk's actions, standing by themselves, fall under the policy's intentional loss exclusion. Firefighter/paramedic Billy Starr reported that, according to Plaintiff, Michael "lite [sic] himself *and part of the living room on fire.*" (emphasis supplied). The reports surrounding the fire and Michael's death indicate that he was found dead in the kitchen despite starting the fire in the living room. These findings aside, one who pours gasoline on himself while in a residence and sets fire to that

8

gasoline intends to bring about a fire.[2]

The parties seem to agree that, had Michael Brunk survived, he would have forfeited his interest under the policy, and one-half recovery would be appropriate. This forfeiture, however, is not determined after the fact nor should it depend on his survival. Rather, at the moment Michael Brunk ignited the fire within the home, his portion of the loss was excluded because it was an act that he committed with the intent to cause a loss. His subsequent death does not override this forfeiture. The clear terms of the policy protect Defendant against insured parties who intentionally inflict damage on their insured property. In essence, Michael's intentional act has the same effect on the insurance policy as a divorce would have on a tenancy by the entirety– it splits the interest. *See United States v. Craft*, 535 U.S. 274, 282 (2002). This left Plaintiff with an interest in one-half of the insurance contract and one-half of the proceeds.

Other cases involving similarly bizarre and tragic fact patterns have allowed full recovery for the innocent spouse when the property is held with a right of survivorship despite the fact that the wrongdoing spouse died after starting the fire. Each of these cases, however, is grounded on the innocent spouse's interest in the property and public policy considerations, not in the insurance contract as mandated by the law. In *Felder v. North River Insurance Co.*, the husband committed suicide after lighting the family home on fire with gasoline. 435 N.W.2d 263 (Wisc. Ct. App. 1988). Although the wife had previously filed for divorce, the parties owned the property jointly with a right of survivorship at the time of the conflagration. The *Felder* court awarded the innocent wife full recovery, noting that "[w]hen [husband] died his interest was extinguished and [wife] continued

---

[2] The policy exclusions "apply whether or not the loss event results in widespread damage or affects a substantial area." Even if it can be argued that Michael did not intend to burn the house down, his ignition of a gasoline fire within the home cannot be said to be unintentional.

to own the property, but in her own right." *Id.* at 266. In so holding, the court referenced the absence of the "predominant public policy concern [] that guilty persons must not profit from their own wrongdoing." *Id.*

In *Safeco Ins. Co. v. Kartsone*, a California district court faced a fact pattern in which the husband intentionally set the home ablaze but suffered severe burns in the process and died several days later. Once again, the court noted the absence of the traditional concerns driving the innocent coinsured doctrine because the wrongdoer died. The property in dispute had been held in joint tenancy, and the court observed that "[u]pon the death of one tenant, the interest of the deceased joint tenant vanishes and the entire estate survives to the other, to the exclusion of the heirs of the decedent." 510 F. Supp. 856, 858 (C.D. Cal. 1981). Thus, the wife's interest in *Safeco*, "at the time of the fire extended to the whole estate and upon the death of [husband], the joint tenancy was automatically terminated and she became the owner of the property." *Id.* The *Safeco* court concluded that the innocent wife was entitled to the full amount of the insurance proceeds even though the husband lived for several days after the destruction of the home.

In *Liggett*, *Felder*, and *Safeco*, the property at issue was held jointly with the right of survivorship, and the wrongdoing spouse died at some point after intentionally setting the home afire. Yet, these cases all held that the innocent spouse was entitled to full recovery based on the nature of the property interest. Contrary to the arguments of Plaintiff, when a coinsured of a tenancy by the entirety dies after committing a wrongful act explicitly excluded from coverage by the terms of the insurance policy, the guilty spouse's interest in the insurance policy has already been severed, regardless of a subsequent death. Thus, when Michael Brunk lit the house and himself on fire, he forfeited his interest in the policy, and his interest did not transfer to Plaintiff.

10

## V. CONCLUSION

The public policy considerations most often set forth in defense of full recovery for innocent coinsureds when their wrongdoing spouses die must not override the terms of the insurance policy when such terms are clear and unambiguous. Here, Michael Brunk forfeited his interest by igniting a fire within the home as prohibited by the insurance policy's exclusion for intentional loss. This forfeited interest was not resurrected by virtue of his death. Defendant has carried its burden and is entitled to summary judgment.

For the above reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is HEREBY DENIED.

IT IS SO ORDERED.

Date: November 2, 2007

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE